Alarms Alarms United States Corporal Peerdoo marks a high slope of slopes known as Run on Highway 6 Clash with United States Colony Commander... Keep me seated Morning everyone, we have just one case on the calendar this morning It's number 06-M806, In re, United States And Mr. Katsas, you're representing the government? And you just want to confirm, you've reserved three minutes for rebuttal? Is that correct? Okay. Proceed whenever you're ready Good morning, may it please the Court The Court of Federal Claims in this case has undertaken the unprecedented act of attempting to review an appointment decision by the full United States Court of Appeals for the Third Circuit regarding judicial officers, namely bankruptcy judges, who serve within the Third Circuit Mr. Katsas, let me just ask you, just kind of by way of a housekeeping question, are things in the Court of Federal Claims presently on hold? There's nothing going on there? That's correct. The discovery has been stayed pursuant to this Court's order All right, and then the other second question I just wanted to ask you, what is the key decision that we have to review in this case? There were several decisions by the Court of Federal Claims. I realize it comes up here in a mandamus petition that grew out of discovery orders, but we're here today in connection with the jurisdictional issue. Which is the key decision for us to look at for purposes of that question? I think there are three, and let me explain why. There were two decisions, Judge Schall, denying our motions to dismiss on jurisdictional grounds. Those decisions are part of why we are here. But a further part of why we are here is the third relevant decision, which is the Court's discovery order, which commands the government to turn over a wide range of extremely sensitive, deliberative documents of the Third Circuit, literally of judges speaking to judges about an individual up for reappointment. I understand. In the record, what are the key jurisdictional ones? Then I'll let you get back to your argument. I just wanted to have that as a framework. The denial of the motion to dismiss, which is elaborated on in two separate decisions below, the first of the two is at tab E of our mandamus petition, the 2002 opinion. That's the 12402? Yes, sir, which addresses primarily the Tucker Act and Teston points that, generally speaking, a failure to appoint is not reviewable through the Tucker Act. And what's the second one? The second is the June 2004 decision, which addresses the further argument about the impact of the CSRA on the Tucker Act analysis. And that is reproduced at tab D, D as in David, of our appendix. Okay. Well, I'll let you get back to your argument. I just wanted to have that.  For your reference, I'm sorry, Judge Prost, but just to finish the housekeeping, the third is the discovery order of October 5, 2005, which is at tab B, B as in Boy, of the appendix. I'm sorry, Judge Prost. Just as a follow-up on the housekeeping, actually that order, which I understand deals with the documents, but I'm a little confused on the record on count one and count two. Because the two opinions that you cited that are in the record seemingly deal with count two. And the order that you identified as the third document says at the end defendants have not moved to dismiss. The court below suggested that they think maybe you ought to. They don't have jurisdiction on count one. We actually did move to dismiss the complaint in its entirety. If you go back to the initial trial court papers, you're right, Judge Prost. The trial court has limited its own analysis to count two, the regulatory count, and has ordered our opponents to show cause why count one, the Fifth Amendment count, should not be dismissed. In our view, the Fifth Amendment count doesn't really add anything to Judge Shull's case, either with respected jurisdiction, because the Fifth Amendment isn't money mandating, or on the merits, because in the context of this kind of claim, he has an entitlement to procedures only if the reg is mandatory rather than precatory. So he doesn't have any Fifth Amendment procedural rights unless and until— But my question is more process than it is substance, which is if we're here with the jurisdictional question and our focus is on count two, and the trial court hasn't really opined on count one yet, other than to suggest that he really doesn't think he has jurisdiction, what do we do with count one? I think our arguments with respect to both jurisdiction and the merits here about appointments being presumptively not reviewable, about the absence of any statute or regulation that creates a right to appointment, about the constitutional difficulties that would arise if this regulation were construed to create a right of appointment, all of those arguments, if you accept them, would be equally dispositive of count one and count two. I think it would be well within the bounds of your discretion to order dismissal of count one. I think if you were uncomfortable with that as a practical matter, your reasoning on count two should cover count one. I think that's sufficiently clear that we would ask for dismissal in its entirety. But just one quick follow-up, which is you said things are on hold now. The latest is he asked to show cause why count one should not be dismissed. Has anything happened in that, or that's just on hold as well? No, that's on hold. The part of it, obviously, that we're more concerned about is the order to turn over the Third Circuit's treasure trove of deliberative documents. Judge Shaw, the reason why both orders are part of the mix on mandamus I think is clear from the Supreme Court's recent decision in the Cheney case. I think this case is, for mandamus purposes, in a similar posture to Cheney in that we have the denial of a motion to dismiss followed by a lower court embarking on problematic discovery, which in a sense crystallizes and focuses and confirms the entire harms of the litigation. What is the problem with discovery if it's done on camera? Why not allow the judge to make a determination as to whether or not those documents are discoverable and then make a determination after he or she sees them? Because the documents that we're talking about are enormously sensitive. They are the internal deliberations of the Third Circuit about a candidate for appointment with, frankly, candid comments about his merits and demerits. The act of ordering in-camera review has supported mandamus jurisdiction in, among other cases, Nixon v. Sirica. The possibility of that kind of deliberative information being turned over to a non-Article III entity gives rise to both the appointments clause kinds of concerns articulated by Justice Kennedy in the public citizen case where he says, of course there will be profound appointment clause problems if the processes by which the appointing authority makes its decision are subject to further review. And moreover, with respect to the impairment point, our second constitutional argument that the function of this Article III court is being harmed because the CFC is a non-Article III entity. So if it was a district court instead of the court of federal plans, would it make a difference? It would be a closer case, although I think we would still be here with an argument that even in-camera review is inappropriate both because of the extremely sensitive nature of the documents and because the nature of the discovery, and this is again a parallel to Cheney, the nature of the discovery confirms the fundamental problem with the underlying litigation and the urgency of an outright dismissal in the following sense. When we moved for 1292B certification, which obviously is a discretionary decision, one of the things the CFC said in denying that motion was he said it's premature in an order in January 2005, and then he said I'd like to see the discovery and I at CFC don't think that the discovery will be very problematic because the other side has said they won't try to depose judges and so on. Well now we've seen the discovery. The discovery seeks the entire body of the Third Circuit's deliberative materials and what Cheney makes clear is that in that kind of situation with problematic litigation leading to problematic discovery, mandamus can be appropriate even before the government or in this case the Third Circuit is compelled to assert retail privilege objections document by document. Remember in Cheney, Supreme Court granted mandamus when the only thing the government had been ordered to do was produce a privilege law. Government hadn't even asserted privileges yet in Cheney and the Supreme Court said this is crazy, this discovery asks for everything under the sky, to quote the court's words. In the context of litigation that the court strongly hinted had no business going forward, it quashed the discovery order, it sent the case back to the D.C. Circuit with a strong hint that they should consider outright dismissal and the D.C. Circuit took that hint on remand and did not simply quash the order to produce a privilege law, but it dismissed the case outright. Now if that's appropriate in Cheney where the only discovery order in play is in order to produce a privilege law and the court ends up dismissing the entire case, I think a fortiori it can be appropriate here where we are still before retail privilege assertions but we're in the discovery process and the discovery has confirmed exactly what we said in our motions to dismiss, that this litigation is profoundly problematic because it seeks an impermissible review of an appointment decision that under the appointments clause must be made, must be made by a court of law of the United States. But you haven't really claimed executive privilege or judicial privilege for that point. We did in the privilege laws. In the privilege laws. Right. Now what happens in a situation that you're saying that the executive privilege and the judicial privilege are one and the same? I think they are. Both are designed, both are designed to protect the processes by which a government entity carries out its assigned functions. We call the invocation judicial process because the government decision maker here is the court of appeals for the third circuit. If you want to call it deliberative process because it's an appointment decision rather than a case of controversy, I don't think much turns on the label. I think the important point is that whether you were talking about judge to judge conversations regarding an appointment decision or say judge to judge conversations regarding a pending opinion, the need for confidentiality is quite self-evident and well supported by those overlapping privileges which I think Nixon versus Sirica basically says are the same. One applies to the judicial branch and one applies to the executive. But again, I don't think that either we or the court need to work through all of the details of retail privilege objections in order to address the broader question of whether this litigation has any business going forward. And whether because of inner branch conflict, a mandamus dismissal is appropriate here just as it was in Cheney. If the inner branch conflict of an Article III court impinging on the prerogatives of the executive branch can support dismissal, which is what Cheney held and ex parte Peru before it, then surely the separation of powers conflict with a non-Article III entity profoundly impinging on the appointment prerogatives of the United States Court of Appeals should likewise be a plausible candidate for mandamus relief. Moving to the other, the jurisdictional question, more of the detailed jurisdictional question, I understand and I appreciate that the government seems to be arguing various theories in the alternative. So let me just see what your position, is it your view that because the statute says may, that's the end of the inquiry? In other words, even if the judicial guidelines had said every bankruptcy judge shall be reappointed unless they've been convicted of a felony, would it be the government's position that there's still no tucker act jurisdiction? I think may, the word may in the statute is a pretty strong indicator. It might not be the entire end of the analysis because the statute here helps the government in three different respects on this discretion point. Number one, it says may. Number two, it says consider, both of which suggest that what Congress has in mind is a discretionary decision. And finally, Judge Prost, the statute also says, doesn't refer in the abstract to regulations promulgated by the judicial conference, it says procedures. It authorizes the judicial conference to promulgate procedures. We think there is a significant difference between the kinds of provisions one sees in regulations other than 5.01b about newspaper publication and comment periods and when the court votes and all of that kind of mechanical stuff. It seems to us it's well within the scope of the delegated authority to promulgate procedures. But I don't think that this regulation as construed by our opponents to effectively compel the appointing authority to reappoint an incumbent in a large class of cases, I don't think that can fairly be defended as a regulation on procedures. So for all of those reasons, we think the statute strongly supports us, but we have many further layers of arguments based on the regulations. Excuse me. To follow up on Judge Prost's question, though, assume for the moment you just had the regulation. That was the only issue. And as she suggested, it did say a bankruptcy judge who seeks reappointment shall be reappointed unless during the period of the previous term he or she has been convicted of a felony. And a judge came up who fell within that statute or that regulatory language. In other words, they had never been convicted of a felony. Would that be a regulation that, assuming it's a regulation, I realize you say that. Assuming it's within the scope of delegated authority. Would that create a clear entitlement as we use the term in Tucker Act jurisprudence? I don't think so because we have a whole—I think that case would obviously be much stronger than the one Judge Scholl has because you're positing a shall rather than a should. And this court has said that should is generally precatory rather than mandatory in a decision acknowledged by the CFC below. But if we assume that you have a shall, then I think that hypothetical case would be very much like this court's decision in Dysart, which is an appointments clause decision cited in our brief, in which case the relevant statute in that case said that certain military officers shall be promoted on certain conditions. And that sounds pretty mandatory. And this court, on review, said that the word shall in that context can and must be construed to be permissive, to be a may rather than a shall, because otherwise that statute would violate the appointments clause by compelling the appointing authority to pick particular candidates over others. The exact language there is reappointment should not be denied. It doesn't say should be made. Should not be denied. Does that make any difference?  Should not be denied? I think it makes a slight difference that cuts in our favor. And the reason I say that is reappointment should not be denied is a passive voice. And the consequence of it being in the passive voice is that there is nothing that looks like rights-creating language, which is one consideration in the Hamlet case. This court said that the presence or absence of rights-creating language in a regulation or a personnel provision is one indicator of whether the provision is mandatory or precatory. So if you had the active voice, a judge should be reappointed if. You wouldn't have the negative, but you would have something that sounds more like rights-creating language. And I think the fact that they used the passive voice cuts in favor of the precatory construction. I can't pretend that either that argument or the only competing argument on the other side, which is that there is a huge difference between should not be reappointed and should be reappointed. I won't tell you that either of those arguments is the end of the story. But I think the absence of rights-creating language cuts in our favor. And when you marry that with this court's general statement in Wing-Lin Tank that should is usually discretionary and further consider the rest of that regulation. The first sentence of which says the decision is vested in the court of appeals. And the second sentence of which talks about the court considering the record of the incumbent. The regulatory text construed as a whole suggests that the decision is discretionary. When you further consider the legislative and regulatory history in which neither Congress nor the Judicial Conference has any hint that they are trying to assign to an entity that cannot constitutionally receive appointment power. The power to dictate who may be appointed. The statutory and regulatory history suggests that both Congress and the Judicial Conference were concerned with a much narrower procedural problem. Namely, avoiding the need for unnecessary background checks when the court of appeals is headed towards a reappointment. But they certainly know how to use language for the Judicial Conference, I presume. Sure. They could have said may instead of should not be denied. If they said may, this would be a very easy case and I assume it wouldn't be here. If they said shall, I think it would be a closer case but we would still win under Dysart. And where they say should, it's an intermediate case. We would have to interpret shall to mean may at that point. Which this court did in the Appointments Clause. In Dysart, right. In Dysart, precisely to avoid the Appointments Clause problem, the two final layers of argument are both the avoidance concerns with respect to Appointments Clause in the line of cases beginning with Marbury v. Madison running all the way through Dysart. And the impairments principle that because the review here would be in a non-Article III entity, that is independently problematic. And finally, we'd have just the general themes that run throughout the law in every analogous area that appointment decisions are generally not reviewable in the way that discharge decisions are. That's the difference between Teston on the one hand and Wickersham on the other. We have a further principle that judicial action is generally not reviewable in court. That principle is embodied in the APA, the CSRA, Title VII, and every federal anti-discrimination statute. But this is not a judicial action. This is an appointment action. It's an action by a court. But it's still an appointment. It's not a judicial determination. I'm sorry? It's not a judicial determination. No, but personnel actions by the judicial branch, personnel actions, not court actions, would not be reviewable in district court through the APA. They would be specifically carved out of every relevant provision of the CSRA. They are specifically carved out of Title VII and ADEA and every federal anti-discrimination statute, where the only question is whether the decision maker has used an odious criterion as opposed to someone other than the appointing authority trying to compel a criterion. In all of those contexts, our legal tradition has been that employment and appointment decisions by the judicial branch are not reviewable in the way that executive action is. And the profound break from tradition that Judge Schultz's construction here would entail, I think, needs a little bit more support than Talmudic parsing of should not versus should, which is the only thing the judge below asserted. Mr. Katz, I have one final question, and then we'll hear from the other side. You've made a number of arguments today, and you have various arguments asserted in your brief. But on the jurisdictional issue, just in one sentence, if you were told you could only rely on one of the jurisdictional arguments that you make, what would it be? It would be that the word should in Section 5.01 of the regulations is best construed as precatory rather than mandatory in light of the statutory background, the regulatory context, the kind of decision we're talking about, i.e., appointment of a high judicial officer by the judicial branch, and avoidance considerations. Thank you. Thank you. We'll hear, and we'll restore, you had questions, we'll restore your three minutes of rebuttal. Thank you. Mr. Lyman, and you will have the same amount of time. I think Mr. Katz has went over by about 11 and a half minutes, but we'll give you the equivalent additional time if you need it in your argument also. Thank you, Your Honors. My name is Clevis Lyman of the Infirmary of Lyman in Ashton, Philadelphia, and I represent the plaintiff, Judge David Shull. May it please the Court. The very last question you asked, Judge Shull, of my adversary counsel leads into my first point, the mandamus standard. Properly, we are here on mandamus only if the trial court usurped its powers that its actions were clearly and indisputably incorrect. Now that we've had a discussion of the shall, may, should, and most importantly, should not problem, I think it is exposed that this is not a mandamus issue. Now you would say it's not mandamus because it's a jurisdictional issue that we could address after the completion of the case in the Court of Federal Claims or because it's a close jurisdictional issue in your view? Well, I was making the second argument, but the last argument is also correct. I don't necessarily concede that it is close, but it's the very type of thing that trial judges are supposed to be doing. They're supposed to be reviewing regulations and considering them in light of authority that may elucidate the text of the regulation, the background of the regulation. Let me ask you as a hypothetical question. Assume for the moment you had a case where a complaint is filed, and I'm not saying that this is this case. But assume for the moment you had a case filed in the Court of Federal Claims that was clearly outside the jurisdictional boundaries of the court. Let's just say, for example, a tort claim. Someone files a tort action in the Court of Federal Claims, and the government moves to dismiss. And the Court of Federal Claims, the judge there, denied the motion to dismiss and then said, all right, we're going to hear this tort action. And then the government sought mandamus. Clearly, I think everyone would agree that the court had acted in a way, had asserted jurisdiction in an area clearly beyond its jurisdiction. Would you say that that was not a proper setting for mandamus? No, because you have essentially put in the language of the standard, which is something that is clearly and indisputably incorrect. And then there are examples that are – So you'd say in that situation, the jurisdictional issue would bring you within the mandamus statute? In that situation, it would. And one of the tests would be if a lower judge clearly violated the command of the statute. And nothing of that sort has happened with respect to any of the issues that have been raised. This is one of the most carefully considered cases of the pretrial stage that I have ever participated in or ever read about. Wait, I think Judge Prost has a question. Let's assume hypothetically that these judicial conference guidelines said it should not be denied unless the court of appeals concludes that this person is not the best candidate for the job. Would you concede that then the decision is solely within the discretion of the court of appeals and therefore there's no jurisdiction in the court of claims? Well, I think I would have to know more about the background of that as to what is meant by not the best candidate for the job. Well, what's critical in my view is not whether it's not the best candidate, but the discretion that's inherent in that hypothetical within the court of appeals. It's not only the best candidate for the job. It's whoever the court of appeals concludes, determines. If it says within its discretion is the best candidate, would you concede if it says whoever the court of appeals determines within its discretion, would you concede then that there's no jurisdiction under the Tucker Act? Well, I don't think the language giving discretion is necessarily fatal to a claim under the Tucker Act. Certainly, the appointing authority in any case must be seen to have discretion. I think that's true in the case of reappointment of college professors, public teachers. What about if it said within the sole and unreviewable discretion of the court of appeals? Well, if it said it was unreviewable, that would certainly be a different case. But short of the specificity of unreviewable, you don't think that there's any discretion that's left to, I mean, courts then will second guess under that circumstance. So then you go to a trial and the court evaluates all of the applicants for the jobs and makes its own determination as to who was the best qualified for the job. Is that the way the process would work then? That would be a very different circumstance. I would have to – I would really have to analyze that circumstance. We're not faced with that here because there is a test, which is whether there is a failure by reason of the past performance of this bankruptcy judge to meet the standards regularly met by bankruptcy judges throughout the United States. Well, what does the language say? He's not failed to perform the duties of a bankruptcy judge according to high standards or whatever? And what's the language is? Reappointment should not be denied unless the incumbent has failed to perform the duties of a bankruptcy judge according to the high standards of performance regularly met by United States bankruptcy judges. Okay. So there seem to be two questions begged by that phrase. One is whether or not this person has failed to meet some standards. And the second question being, what are those high standards, correct? That's correct. So is it your position that the court of federal claims in this instance gets to make those determinations? Well, I don't think that is going to happen in this case because there has been an answer filed, and there has been no defense asserting that Judge Scholl failed to meet these high standards. That would be an affirmative defense under the law governing the procedure for raising defenses. This is a case where Judge Scholl was never told what standards he was going to be judged by. He was never told of any violation, any failure to meet any standard whatsoever. And no finding was ever made by the court of appeals that he violated or failed to meet any standard. Well, how do we know? I mean, we know they advised him that he was not getting reappointed. That's right. Apparently, all that happened was that they took a vote without making any findings whatsoever. Well, where is it in the regulations that say they have to make findings? I mean, it seems to me that this inherent in this is that they conclude something, but where do we find findings, or is it in your view that's inherent? In my view, it is inherent. This standard is more explicit than the standard in civil service statutes in every state, I would suppose, everyone I'm familiar with, in the United States, which says that classified employees can only be dismissed for cause. That is the phrase. That's the phrase that went to the Supreme Court in the case of Loudermill v. Cleveland Board of Education. And once you create a for cause standard, of course, then certain due process procedural rights kick in under either the 14th Amendment in the Loudermill case or the 5th Amendment in the case of a federal employee. That's count one, right? Count one of your complaint. That is count one of the complaint. So at the very least, under well-established Matthews v. Eldridge principles of due process, if there is an adverse personnel action being taken under this provision, there must be notice and opportunity to combat the charge of failure to meet the standard. And that did not happen. But those are individuals who are in the position. So those are termination procedures, not for reappointment. The very first case that I had in this area involved a professor who was not reappointed. There are many cases. We cited a number of them in our brief involving non-reappointment. A very important one is the case of the Mount Healthy Board of Education. That was non-reappointment of a teacher. We just had a situation— But that was more consistent with a tenure provision. There's no tenure arrangement for an appointment for a certain number of years. There's no right to reappointment as such. The only right to reappointment is under the regulations under the statute. The statute does say may. And the regulation, as was pointed out, reappointment should not be denied. Your counsel for the government said reappointment should not be denied. It's much stronger in their favor than yours. Can you answer that? Well, that's not what Judge Basker said. I read Judge Basker's decision. Right. Rather learned analysis. Once you take the word should and put it in conjunction with the negative not, it is, according to his analysis and his authorities, invariably mandatory rather than directory. And I really don't have any learning to add to what he said in his decision in that respect. But that's certainly the way it appeared to me when I read it the first time. And can you represent my client in this matter? John, you—turning to count two, which is based upon the guideline provision, correct? 5.01B? May I raise a point of order? The government has lately taken to calling the regulations guidelines, which they clearly are not. Well, let's not worry about that. We can figure out what it is. But whether we call it a regulation or a guideline, 5.01B is the key provision. That's correct. Correct? And that is the provision on which you really rely. That is exactly the provision. And you would say it's a regulation. It's called a regulation in the set of regulations, Congress-authorized regulations. Let me ask you, what about the provision in the statute that says, in the Tucker Act, it refers to regulation of an executive department. Now, the administrative office or the judicial conference of the United States is not an executive department. As we said in our last brief on the matter, the violation of this regulation falls under the catch-all provision of the Tucker Act for liquidated or unliquidated damages in cases not sounding in tort. No, but you're hanging your hat on 5.01B, which you say is a regulation. Yes. That's correct. You're saying that regulation has been violated. Yes. And the Tucker Act only keys in, if you have, as I read the statute, a regulation of an executive department. The government says that we don't have here—if you assume this is a—the government would say, if you assume this is a regulation, this is not a regulation of an executive department because the judicial conference of the United States is not an executive department. What is your answer to that argument? My answer to that argument is that the Tucker Act says, and I quote, a suit may only be brought—well, I'm not quoting it yet. Well, leave that last part aside. Assume that all you had, just for purposes of the discussion, was the executive department issue. In other words, a regulation of an executive department. That was all that you had. You know, in a jurisdictional case, we had to explore all the parameters here. How do you get around the argument, the government's argument, that this is not—if it is a regulation, it's not a regulation of an executive department? Well, if we're getting back to the language of the Tucker Act, this case is founded— No, no, no. I'm not leaving that aside because that's or. How do you get around that argument? Just for purposes of the hypothetical question, just focus on that. Well, there's no requirement that the action be founded only on an executive department regulation. This action is founded on an act of Congress, namely— Let me ask you this. Would you concede that the judicial conference is not an executive department? That's my understanding. That's right. So you don't dispute that? I don't think it's an executive department in the meeting of the Tucker Act. So what is—just to follow up so I'm clear. So your position would be that we've got an act of Congress here, and even though the act of Congress uses the word may, because these regulations are promulgated pursuant to an act of Congress, that brings those in, notwithstanding they're not executive branch regulations. Is that the argument? No, that is not the argument that I was making. As to the act of Congress, this suit is founded on the money mandating provision, the payment provision in the Judiciary Code found in 28 U.S.C. 153. You must pay a bankruptcy judge his pay. But this action falls under three of the provisions I read. Count one is founded on the Constitution, as well as the act of Congress I cited, and count two is founded on the act of Congress that I cited, and it is also an action under this regulation, which falls under the liquidated damages cases not sounding in tort. So it's in three ways under the Tucker Act. What are the liquidated—how do you get to liquidated damages here? Judge Scholl is entitled to be paid 92% of the salary of a district judge, and that's set forth in another provision of the Judicial Code, and at one point it was approximately $143,000 per annum. Judge Basker held that the Back Pay Act was appropriate, which governs the calculation of the remedy. There are provisions for interest. There are provisions for mitigation. But how can he be—let me ask you this. Mr. Lyman, how can he be entitled to that money, to the pay of that position, and you correctly stated it, if he hasn't been appointed to that position? He has been appointed to that position. He was appointed to that position in 1986. I believe it was August 27th of 1986. But that was a 14-year term. That is correct. But in 1996 and 1997, the Act was amended, the regulations were adopted, and that created, in addition to the specified 14-year term, a presumption of reappointment, which could not be denied unless. So as of 1997, he now had a presumption of reappointment. What if the statute, as we have here, does say may, and the regulation is in conflict with the statutory language, which would govern at that point? Well, I don't think you have to reach that problem, but I will answer your question. But I do want to point out that these regulations were implicitly and, in a sense, expressly adopted, and I would support either interpretation, by the Third Circuit. Because the Third Circuit, in 1998 and in 2000, adopted supplementary regulations, expressly referencing the Judicial Conference regulations. In fact, they even key-numbered them in under the number five. Well, there's no evidence in the record that they originally adopted the initial regulations. It's only the supplemental regulations which were specifically adopted. So there's an inference that they adopted the previous ones. Yes, and then in the correspondence with Judge Scholl and in their activities, they were following these regulations with Judge Scholl, up to a point when they got to 5B, when they no longer followed the regulations. They communicated to him that they were following these regulations. They were always referred to as regulations. Even before Judge Basker, the government conceded that they were regulations. It's only, I think, in this court that the word guidelines has been substituted. And I do want to point out some of the procedural... Well, what about the conflict issue between the language and the statute and the language and the regulations and guidelines? Well, I think Judge Basker correctly identified that. When the statute was passed, there were no regulations. So this was a future or potential use of the verb. It was not a requirement that the regulations be adopted. The Judicial Conference was authorized to adopt regulations. But that didn't mean that once the regulations were adopted, that they didn't have to be followed. Well, what if the statute said may and the regulations clearly say shall? Direct conflict between a statute and a regulation. Which governed? Well, if you have a direct conflict between a statute and a regulation, the statute would govern. But as the Adversary Council pointed out, even may and shall are not necessarily contradictory because sometimes may can be construed to mean shall and vice versa. In this case, there is a way to harmonize the language and the statute with the regulations, which are mandatory. And I think Judge Basker handled that very well in his opinion of 2002. Mr. Lyman, you make various arguments in your briefs. I'm looking at the January 9 brief of yours that was submitted in response to our order. And at the top of page 8, you state that non-reappointment is a form of discharge. What argument does, I mean, that's a proposition you're stating there. Which of your contentions does that proposition support? In other words, what is your reason for advancing that contention? How does that help you? By saying non-reappointment, is it your liquidated damages argument, the regulation argument? In other words, what argument that you're making is that statement relevant to? It supports the argument that Judge Scholl is entitled to pay. This is not a pre-appointment situation. This is someone who is in office. In fact, the non-reappointment occurred in May, three months. But entitled to pay for what reason? Certainly, is it relating to your argument with respect to section 153? Yes. If I may cite Judge Basker in the 2002 opinion, I'm looking at page 4 of the Lexis version of it. Here, however, the plaintiff is not seeking the benefit of a position to which he wasn't appointed. Unlike Teston, this case is about whether or not Judge Scholl, as the incumbent officeholder, had a firm right to be reappointed to his position as a bankruptcy judge. The defendant agreed in oral argument that if Judge Scholl had such a right, then he is statutorily entitled to compensation. Teston, therefore, is not dispositive. So your view is that he did have a firm right in line with Judge Basker's decision? That's correct. And from where, in your view, does that firm right arise? What statute or regulation or guideline provision gives that firm right, in your view? From the language, reappointment should not be denied unless the incumbent has failed to perform the duties of a bankruptcy judge according to the high standards of performance regularly met by United States bankruptcy judges. So you would say if one finds a firm right from that provision, you win? That is right. At least on the jurisdictional issue. Now if one disagrees with you and does not find a firm right arising from that, do you lose? I think it is required, for example, under the constitutional argument to find an objectively reasonable expectation. No, but that's count one. Yes. Looking just at count two, because Judge Basker seemed to express some concerns about jurisdiction under count one. But getting back to count two, which is based on the regulation, correct? Yes. Just assume that was the only thing we had before us. If one agrees with you that that regulation gives rise to a firm entitlement, you would prevail, correct? Yes. What if one disagrees with you on that? Do you lose on count two? Count two. Let me quickly try to find the complaint. There's a number of violations of the regulations that occurred towards the end of this process. So we'd have to go through that more or less paragraph by paragraph. Okay. But let's assume to make it easier. Let's assume for the moment that the only – and we can obviously check the record, Mr. Liman – let's assume for the moment that the only regulation – and I'll put quotes around regulation to recognize the disagreement between the parties on this – but let's assume for the moment the only regulation that's in issue is 5.01b. There's no other regulations at issue. The only language that's at issue is the language you have quoted to us correctly. Again, if we see that as giving rise to clear entitlement, as Judge Basker did, you win, correct? Correct. But if we disagree and say it doesn't, do you lose? Well, that, of course, is one of the central contentions of count two, I would say the most important. So you would say – do you acknowledge that – or you – again, if we disagree with what you say, the right that that regulation creates, do you lose? In other words, if we disagree with Judge Basker, do you lose on the jurisdictional issue? On count two. Well, you would have to find at this stage that it was clearly and indisputably incorrect on amendable standards. No, assuming we get past that. If you reverse Judge Basker on that point, of course, we can't win on that point. In other words, if we agree that that doesn't give rise to entitlement, you lose on that point. Yes. Okay. Thank you. Now, you have – let's see, hopefully I counted this right. I mean, you're entitled to, I think, in total, it looks like Mr. Katsas has an additional 14 minutes. So I've tried to keep track of yours, and I think you're up to about 13 and 50, so we'll give you another minute to sum up. Thank you. I'd like to address a few housekeeping matters. First of all, the government, on the first motion to dismiss, did not move on a jurisdictional basis. They basically conceded jurisdiction, but Judge Basker decided to analyze jurisdiction. They had made a 12B4 motion, which now under the rules is a 12B6 motion for failure to state a claim. We don't – that doesn't – it's not relevant to anything we're doing here. Well, in that they say they're seeking review of that decision, I think it's important for you to know that they didn't even raise jurisdictional challenge at that point. But it did get ruled on in the decision. They waited two years to seek interlocutory appellate review, and it was denied primarily because their application was untimely. So now they're trying to do by mandamus something that they neglected to do. In fact, even after that decision, they put in a status report that they were planning to file for interlocutory appeal, and they just didn't do it for two years. I also want to point out that there are at least three issues that are raised in this court for the first time that Judge Basker never had an opportunity to rule on. One is the appointments clause issue. Another is the deliberative process privilege. And the third is the separation of powers. I'd also like to reemphasize that, as has already been pointed out, Judge Basker says he is going to rule on the jurisdiction on count one, which he's raised to his sponte, and that opportunity for him to do that was cut off by your state order of October 28th of last year. And, of course, he has not made any rulings on the producibility of these documents. He's just at the stage of ordering in-camera review. Thank you, Mr. Lemon. That's helpful. That brings us up to speed on the—rounds out the posture of the case, and that's good to have. We'll hear now the government's rebuttal. Mr. Katsas, we'll give you your full three minutes. Thank you. On the question of mandamus standards and jurisdiction, the discussion about whether Section 5.01 is mandatory or precatory goes to core questions of subject matter jurisdiction. I don't know whether that was clear when the case was briefed below, but it is now crystal clear after this Court's in-bank decision in the Fisher case, holding that the presence or absence of a money-mandating provision is an element of subject matter jurisdiction. You're saying jurisdiction—you're relying on the proposition that jurisdiction is a matter that can and, indeed, must be noticed at any time. Right. And further, with respect to mandamus, jurisdiction is not a technical concept for mandamus purposes. And in Cheney, there was no doubt at all that the district court had subject matter jurisdiction, but the Supreme Court said mandamus was appropriate to correct legal errors that were fomenting interbranch conflict. On the question of the open-ended nature— I think Judge Gaillard has a question. Going back a second to the Fisher opinion by this Court, the in-bank provisions, doesn't that really work against you? Wouldn't we have to send it back for determination on the merits? No, because Fisher holds that there is overlap between jurisdiction and merits in Tucker Act cases. Fisher holds that the existence or not of a money-mandating provision that can support a Tucker Act case— Isn't there a money-mandating provision in this case? That's what we're here debating. I think clearly, no, because— No, because the regulation is best construed to be precatory rather than mandatory. And if the regulation drops out of the case, there is a provision for Judge's salary. It's money-mandating, but it's not even arguably applicable to Judge Scholl absent the regulation because, as you pointed out, she was only appointed for a 14-year term. And Section 153 of Title 28 is a salary provision. It's not an annuity provision. It entitles him to yearly pay for the 14 years of his term. So he really needs the regulation to have any tolerable entitlement to pay during what he hopes to be his second term. And the question whether or not the regulation supports an award of money under Fisher is an element of this subject-matter jurisdiction that not only may but indeed must be raised at any time. Judge Prost, on the open-ended nature of the regulation, I think you're absolutely right. That further supports our interpretation because if you imagine what the CFC proceeding would look like, the Third Circuit has gone through typical appointment processes, solicited views, and made its judgment about whether this candidate— Okay, well, let me ask you about that, and I don't want to mess up the time here. But let's assume, hypothetically, that the Third Circuit put in writing in everybody's mind, this person met the high standard, but we just think we need fresh blood in here, so we're appointing so-and-so. Under my argument to them, can't they still prevail then? I think we could still prevail because the word should is better read as may. Of course, there's no indication that the Third Circuit did that, and indeed, to the extent opposing counsel invokes our briefs in our answer at paragraphs 37 to 38, the answer we specifically denied, that Judge Scholl met the high standard. So what he wants and what would necessarily happen if this litigation goes forward is a trial on the merits in which the Court of Federal Claims, which is not an Article III entity, is a specialized court with no responsibility for or expertise in bankruptcy, is itself fundamentally redoing and second-guessing the appointment decision of the Court of Appeals that superintends the bankruptcy court at issue and the dissonance and implausibility of having that kind—having the CFC ultimately decide— I think you went over a little bit longer than your added rebuttal, and I think Mr. Lyman went over a little bit, so I think it's been roughly the same, but thank you. You've been generous with your time, and we thank you for that. Thank you. We have the arguments. The case is submitted, and that concludes this morning's hearings. All rise.